# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1503

_____

United States of America,

*Plaintiff - Appellee*,

v.

Michael Reis,

*Defendant - Appellant.*

_____

No. 25-1504

_____

United States of America,

*Plaintiff - Appellee,*

v.

Michael Reis,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 11, 2026
Filed: July 20, 2026

_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

COLLOTON, Chief Judge.

In separate criminal cases, Michael Reis was convicted of conspiracy to distribute fentanyl resulting in death and sex trafficking of a minor. *See* 21 U.S.C. §§ 841, 846; 18 U.S.C. § 1591(a). The district court[*] consolidated the two cases for sentencing and imposed concurrent life sentences. On appeal, Reis challenges the sufficiency of the evidence on the conspiracy conviction, and he raises multiple challenges to his sentences. We affirm the judgments.

According to evidence at trial, Reis sold a counterfeit oxycodone pill, also known as an M-30 or a "perc," to Paris Hunt. Reis arrived at Hunt's apartment at approximately 3 p.m. on March 12, 2022. Five minutes later, Hunt paid Reis for the pill using a mobile financial platform.

At 4:32 p.m., Hunt called 911 after she found her four-year-old son, P.H., unresponsive. Hunt told the responding officer that her son may have taken "half a Percocet" that she had placed on her nightstand but could no longer find. P.H. later died from fentanyl toxicity. A jury found Reis guilty of conspiracy to distribute fentanyl resulting in death.

During a separate investigation in July 2022, a fifteen-year-old female, MV1, told police that Reis had trafficked her for sex. Investigating officers found photos of MV1 on a website containing commercial sex advertisements. These advertisements listed Reis's phone number as the contact number. When officers searched Reis's phone, they found conversations between Reis and several persons

_____

[*]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

who were interested in paying to have sex with MV1. Reis sent these people explicit photos of MV1, and discussed in messages the prices that he would charge for sexual acts with MV1.

During a police interrogation, Reis admitted to suspecting that MV1 was a minor. Reis also acknowledged that on one occasion, he collected $500 for providing MV1 to have sex with a customer at a motel. He confessed that he kept all of the money and never spoke to MV1 again. Reis pleaded guilty to sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a).

The district court consolidated the sentencing hearings for the two convictions. In calculating the advisory guideline range, the district court applied a two-level increase because the defendant knew that a victim was a vulnerable victim. *See* USSG § 3A1.1(b)(1). The court cited the fact that MV1 was homeless and a runaway. The district court also found that Reis had not accepted responsibility under USSG § 3E1.1 for the combined offenses. The court then sentenced Reis to concurrent life sentences.

Reis first challenges the sufficiency of the evidence supporting his conviction for conspiracy to distribute fentanyl resulting in death. In reviewing that issue, we consider the evidence in the light most favorable to the verdict and will reverse only if no reasonable juror could have found guilt beyond a reasonable doubt. *United States v. Conklin*, 750 F.3d 773, 774 (8th Cir. 2014).

Reis argues that the prosecution failed to establish that the pill he sold to Hunt was the direct and exclusive cause of P.H.'s death because there were other pills and pill bottles in Hunt's apartment. These pills and pill bottles were not seized or tested by the police. Reis contends that the fentanyl consumed by P.H. could have come from some other source in the apartment.

To prove that Reis committed the offense, the government was required to establish that the fentanyl distributed by Reis was the "but-for" or "independently sufficient" cause of P.H.'s death. *United States v. Shipp*, 141 F.4th 940, 946 (8th Cir. 2025). Viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found that the element was satisfied beyond a reasonable doubt. A reasonable jury could have found that Reis sold Hunt a pill containing fentanyl. Reis admitted to the police that he left Hunt with a "30," and a police officer testified that the term "30" in the drug trade refers to an "M30," which is a counterfeit oxycodone pill containing fentanyl.

The jury also reasonably could have found that this fentanyl caused P.H.'s death. Approximately ninety minutes after Reis left the pill with Hunt, she found P.H. unresponsive. Reis admitted that he left Hunt with a pill, and a pill cap containing fentanyl residue was located near where P.H. was found unresponsive. Hunt also told the responding officer that she believed P.H. consumed "half a Percocet" that she could not locate. The counterfeit oxycodone pills called "M30s" are also referred to as "percs." Percocet is a medication containing oxycodone and acetaminophen, so Hunt's description corresponds to Reis's distribution of a counterfeit oxycodone pill that contained fentanyl.

The jury also reasonably rejected Reis's argument that the fentanyl came from some other source in Hunt's apartment. Although the crime scene investigator did not seize or test other pills or pill bottles from Hunt's apartment, the investigator testified that those items were either located out of the reach of a four-year-old child or that the bottles did not appear to be opened or disturbed. Considering Reis's admissions and the circumstantial evidence, we conclude that there was sufficient evidence to support the jury's finding that the fentanyl sold by Reis was a but-for or independently sufficient cause of the child's death.

Reis raises two procedural challenges to the sentencing guideline calculations for his sentence on the sex trafficking conviction. We review the district court's findings of fact for clear error and its application of the sentencing guidelines *de novo*. *United States v. Rivera-Mendoza*, 682 F.3d 730, 733 (8th Cir. 2012).

Reis contends that the district court clearly erred by declining to apply a downward adjustment for acceptance of responsibility under USSG § 3E1.1. The sentencing guidelines permit consolidated proceedings for charges contained in different indictments, and Reis did not object to the consolidation. USSG Ch. 3, Pt. D, intro. comment. Because Reis was sentenced for multiple convictions, the district court calculated his guideline range using the procedure outlined in USSG Chapter 3, Part D. The conspiracy count and the sex trafficking count were treated as separate "groups" under USSG § 3D1.4. The court determined a combined adjusted offense level for the two counts, and then addressed acceptance of responsibility.

The district court correctly recognized that where a defendant pleads guilty to one count and proceeds to trial on another charge, the sentencing court should consider the totality of the circumstances in deciding whether the defendant has accepted responsibility under USSG § 3E1.1. *See United States v. Vang*, 3 F.4th 1064, 1068 (8th Cir. 2021); *United States v. Wattree*, 431 F.3d 618, 622-23 (8th Cir. 2005). The court then concluded that because Reis did not plea guilty in the drug conspiracy case, he should not receive credit for acceptance of responsibility against his combined adjusted offense level for both offenses of conviction.

The guidelines do not mandate an "all or nothing" approach where a defendant may receive a reduction for acceptance of responsibility only by pleading guilty to all offenses of which the defendant is convicted. *Wattree*, 431 F.3d at 621. At the same time, the guidelines do not mandate a downward adjustment if a defendant pleads guilty to any count of conviction. *Id*. at 622-23. While the district court's discussion here was brief, we conclude that there was no clear error in denying the adjustment

under the circumstances. The drug conspiracy charge involved a death and was a significant portion of the overall prosecution. Reis proceeded to trial on that serious offense and contested factual guilt. Although he pleaded guilty to the separate sex trafficking charge, the district court permissibly found based on the totality of the circumstances that Reis had not clearly demonstrated acceptance of responsibility.

Reis also disputes the district court's application of a two-level adjustment for a vulnerable victim. Reis contends that because the victim's age is an element of the offense of sex trafficking a minor, and therefore reflected in the base offense level under the guidelines, the adjustment for a vulnerable victim does not apply. The court's finding, however, was based not merely on age, but on the victim's status as a homeless person who had run away from home and lacked adult support. *See United States v. Evans*, 285 F.3d 664, 672 (8th Cir. 2002). When Reis asked MV1 about her parents and whether she was on the "run," MV1 responded that her mother was a drug addict in Arizona and her father had just been released from jail. Reis knew that MV1 was vulnerable, and he even admitted to investigators that he sought out "vulnerable" women so that he could profit by selling them for sex. The district court did not err when it applied the vulnerable victim adjustment.

Reis next contends that the life sentence imposed by the district court on the fentanyl charge is substantively unreasonable. We review the district court's choice of sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). Reis's sentence was within the advisory guideline range, so it is presumptively reasonable. *United States v. Williams*, 913 F.3d 1115, 1116 (8th Cir. 2019) (per curiam).

Reis argues that the sentence creates an unwarranted disparity in sentencing because Hunt was sentenced to only five years' probation for negligent child abuse in Nebraska state court. Section 3553(a) requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But Hunt was convicted of a different crime than Reis in a different sovereign. The district court reasonably observed that the offenses were not comparable due to differences in offense conduct. As for the remainder of the § 3553(a) factors, the district court emphasized that Reis's actions caused the death of a four-year-old child and that Reis "poses an extreme danger to society." The court's decision to impose a guideline sentence of life imprisonment was within the wide latitude available to the sentencing judge.

The judgments of the district court are affirmed.

_____